McDonald, j.
IsThe State filed a petition alleging that C.T., a 15-year-old juvenile, should be adjudicated delinquent and/or in need of supervision based upon the commission of possession of a Schedule I controlled dangerous substance (marijuana), a violation of LSA-R.S. 40:966(C) (Count 1); illegal carrying of a weapon with a controlled dangerous substance, a violation of LSA-R.S. 14:95(E) (Count 2); illegal possession of a stolen firearm, a violation of LSA-R.S. 14:69.1 (Count 3); and unauthorized use of a motor vehicle, a violation of LSA-R.S. 14:68.4 (Count 4). C.T. denied each allega *73 tion of the petition and later filed a motion to quash the petition based on Double Jeopardy. After an adjudication hearing, the juvenile court granted C.T.’s motion to quash with respect to Count 1, entered a directed verdict finding C.T. not to be delinquent under Count 3, and adjudged C.T. to be delinquent as to Counts 2 and 4. After a disposition hearing, C.T. was committed to the Department of Public Safety and Corrections until his 21st birthday.[2]
C.T. appeals and asserts three assignments of error. For the following reasons, we affirm the juvenile court’s adjudications and disposition committing C.T. to the Department of Public Safety and Corrections until his 21st birthday. We also vacate the written six-month disposition on Count 1 and remand to the juvenile court for a correction of the minutes and written judgment of disposition.

FACTS

In the early morning hours of August 18, 2015, Baton Rouge Police Department Officers Travis Denicola and Curtis Wilson were dispatched to a McDonald’s restaurant at the corner of Airline Highway and Prescott Road in Baton Rouge, Louisiana, in response to a report that two juveniles were passed out inside of a vehicle. Upon arrival, Officer Wilson noted that the vehicle was a white Ford F-150 truck with a United States Marine Corps license plate, the two occupants appeared to be asleep, and a strong odor of marijuana was com-1 ing through the truck’s open windows. Officer Denicola approached the driver’s side, where T.R., C.T.’s codefendant who is not a party to this appeal, was seated. Officer Wilson approached the passenger side where C.T. was seated. In response to Officer Denicola’s command that they |sshow their hands, the occupants startled, and Officer Wilson saw C.T. take a semiautomatic pistol from his lap and place it under the passenger seat. Both occupants were removed from the truck, handcuffed, and advised of their Miranda[3] rights. During the search of the truck, Officer Wilson recovered the pistol from under the passenger seat. The officers also found a burnt marijuana cigarette in an indentation in the truck’s center console and a bag of marijuana in T.R.’s sock. Officer Wilson later determined that the truck’s owners lived in Zachary and had reported the truck as stolen a few weeks earlier.

SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, C.T. argues that there was insufficient evidence to support his adjudications of delinquency for illegal carrying of a weapon with a controlled dangerous substance and for unauthorized use of a motor vehicle.
In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. LSA-Ch.C.- art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. State in Interest of S.T., 95-2187 (La.App. 1 Cir. 6/28/96), 677 So.2d 1071, 1074.
In State in Interest of Giangrosso, 385 So.2d 471, 476 (La.App. 1 Cir.1980), affirmed, 395 So.2d 709 (La.1981), this court stated:
In juvenile proceedings, the scope of review of this court extends to both law *74 and fact. Article 5, Section 10, Constitution of 1974; see State in Interest of Batiste, 367 So.2d 784 (La.1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty •beyond a reasonable doubt.
Thereafter, in State in Interest of Giangrosso, 395 So.2d 709, 714 (La.1981), the Supreme Court affirmed this court, concluding that a rational trier of fact could have found, from the evidence adduced at the trial, proof of guilt beyond a reasonable doubt, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and State in Interest of Batiste, 367 So.2d 784 (La.1979). See In Interest of L.C., 96-2511 (La.App. 1 Cir. 6/20/97), 696 So.2d 668, 669-70.
Accordingly, on appeal, the standard of review for sufficiency of the evidence enunciated in Jackson v. Virginia is applicable to delinquency cases, i,e,, whether, viewing the | ¿evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821.[4]' Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the trial court was clearly wrong in its factual findings. See State in Interest of D.M., 97-0628 (La.App. 1 Cir. 11/7/97), 704 So.2d 786, 789-90.

Illegal Carrying of a Weapon While in Possession of a Controlled Dangerous Substance

In pertinent part, LSA-R.S. 14:95(E) prohibits the carrying of a weapon if the offender uses, possesses, or has under his immediate control any firearm while in the possession of a controlled dangerous substance. The term “possess” is broad enough to encompass both actual and constructive possession under LSA-R.S. 14:95(E). Constructive possession occurs when the firearm is subject to the defendant’s dominion and control, even temporarily. Constructive possession contains an element of awareness or knowledge that the firearm is there and general intent to possess it. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2). Although the existence of intent is a question of fact, it may be inferred from the circumstances of the transaction. State v. Zeno, 14-0325 (La.App. 1 Cir. 9/19/14), 155 So.3d 4, 11, writ denied, 14-2167 (La.5/22/15), 170 So.3d 983.
C.T. argues that the State failed to prove a nexus between the marijuana and the pistol recovered in the instant case, citing State v. Blanchard, 99-3439 (La.1/18/01), 776 So.2d 1165. He contends that the State did not show his actual possession of the marijuana or a connection between the possession of the marijuana and the possession of the pistol.
In Blanchard, 776 So.2d at 1173, the Supreme Court stated that “under La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate *75 control, the [S'jtate must prove more tha[n] mere possession of the firearm.” (Emphasis added.) In this case, however, the State clearly proved C.T.’s actual possession and immediate control of the pistol through 1 ^Officer Wilson’s testimony that he saw C.T. remove the pistol from his lap before stashing it.under the passenger seat. C.T. contends that Blanchard- requires proof of a connection between the weapon possession and the drug offense when proof of the drug offense is by constructive possession, even though proof of the weapon possession was by actual possession. This interpretation of Blanchard is incorrect. When a defendant is in actual possession of the weapon or when it is within his immediate control, the State must prove no more than mere possession of the weapon and possession of the controlled dangerous substance. See State v. Jarvis, 01-1277 (La.App. 4 Cir. 2/13/02), 811 So.2d 38, 41, writ denied, 03-0248 (La.2/13/04), 867 So.2d 677.
In short, the State sufficiently proved C.T.’s actual possession of the pistol and his' constructive possession of the burnt marijuana cigarette. Offícér Wilson’s testimony supported the conclusion that C.T. actually possessed the pistol. C.T.’s constructive possession of the marijuana is supported by the fact the truck strongly smelled of marijuana, by the officers’ discovery of the burnt marijuana cigarette in plain view and within reach of both C.T. and T.R., and by T.R.’s statement that the juveniles had smoked marijuana earlier that day. These facts support the conclusion that C.T. was in constructive possession of the marijuana recovered from the truck because the marijuana was subject to his dominion and control and he knowingly possessed it. See State v. Trahan, 425 So.2d 1222, 1226. (La.1983); State v. Harris, 94-0696 (La.App. 1 Cir. 6/23/95), 657 So.2d 1072, 1075, writ denied, 95-2046 (La.11/13/95), 662 So.2d 477.
C.T. did not testify at the adjudication hearing, nor did he call any witnesses on his behalf, so the testimony presented by the State was uncontroverted. In adjudicating C.T. delinquent as to Count 2, the juvenile court, as the rational trier of fact, clearly accepted the testimony of the State’s witnesses and found that the State proved the essential elements of illegal carrying of a weapon with a controlled dangerous substance beyond a reasonable doubt. After a thorough • review of the record, we find the evidence supports the juvenile court’s adjudication. Additionally, after undertaking the mandated review of the law and facts in a juvenile proceeding, we cannot conclude that the juvenile court was manifestly erroneous or . clearly wrong in its adjudication of delinquency based on the commission of this offense. This portion of C.T.’s assignment of error is without merit.
|fi Unauthorized Use of a Motor Vehicle
Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently. LSA-R.S. 14:68.4(A).
Initially, we note that the State did not attempt to establish or even argue that C.T. participated in the theft of the truck. Such is not a required element of the offense of unauthorized use of a vehicle. See LSA-R.S. 14:68.4(A). Thus, to support C.T.’s adjudication, the State was only required to prove that C.T. intentionally used the truck without the truck owner’s permission.
The uncontroverted evidence presented at the adjudication hearing shows that 15-year-old C.T. and 16-year-old T.R., both juveniles, were found passed out in a truck *76 at 1:00 a.m., while in possession of marijuana and a pistol. One of the owners of the truck, Crystal Etue, testified that she and her husband reported the truck stolen on July 23, 2015. Ms. Etue did not know either juvenile nor did she or her husband give them consent to use the truck. Finally, when Officer Wilson questioned the juveniles, they both denied knowing the truck was stolen.
In adjudicating C.T. delinquent as to Count 4, the juvenile court, as the rational trier of fact, clearly accepted the testimony of the State’s witnesses and found that the essential elements of unauthorized use of a motor vehicle were proven beyond a reasonable doubt. After a thorough review of the record, we find the evidence supports the juvenile court’s adjudication. The State’s evidence proved beyond a reasonable doubt that C.T. had no appreciable knowledge of any consent by the truck owner for him or T.R. to use the truck. By admitting to Officer Wilson that they did not know whether the truck was stolen, the juveniles implicitly admitted that they did not know who owned the truck, lending credence to the State’s theory that they in fact had no consent to use the truck.
Additionally, after undertaking the mandated review of the law and facts in a juvenile proceeding, we cannot conclude that the juvenile court was manifestly erroneous or clearly wrong in its adjudication of C.T.’s delinquency based on the commission of this offense. This portion of C.T.’s assignment of error is without merit.

JjEXCESSIVE DISPOSITION

In his second assignment of error, C.T. argues that his disposition of confinement until his 21st birthday is unconstitutionally excessive.
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962.
After adjudicating a child.to be delinquent, a court is required to impose the “least restrictive disposition” authorized by Articles 897 through 900 of the Louisiana Children’s Code that “the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.” LSA-Ch.C. art. 901(B). Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists: (1) there is an undue risk that during the period of a suspended commitment or probation the child will commit another crime; (2) the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment; (3) a lesser disposition will deprecate the seriousness of the child’s delinquent act; and (4) the delinquent act involved the illegal carrying, use, or possession of a firearm. LSA-Ch.C. art. 901(C); State in the In *77 terest of J.W., 95-1131 (La.App. 1 Cir. 2/23/96), 669 So.2d 584, 586, writ denied, 96-0689 (La.4/26/96), 672 So.2d 911.
Prior to the disposition hearing, the juvenile court ordered a detailed predisposition report, which was filed into the record. This report detailed C.T.’s prior arrest and detention history, his personal history, and risk factors associated with his prior behavior.
| sAt the disposition hearing, the juvenile court noted that C.T. was in need of rehabilitation. After having heard C.T.’s mother testify, however, the judge was concerned as to whether she would be in a position to assist in C.T.’s rehabilitative process. The court further found that C.T. was supposed to be on house arrest at the time of the instant offenses and that he did not have a history of abiding by probation conditions. Additionally, the court considered C.T.’s entire juvenile history, consisting of two sets of adjudications, but thirteen total arrests. The court stated that C.T.’s arrest history indicates his criminal behavior has continued to escalate and become more violent, including one of the instant adjudications involving the possession of a firearm. Finally, the court noted that commitment was important to address C.T.’s educational and substance abuse needs, as well as his needs for individual and family counseling. . Based upon these factors, the court committed C.T. to the custody of the Department of Public Safety and Corrections until his 21st birthday.[5]
¡.Considering the predisposition report and the reasons cited at the disposition hearing, we find that the juvenile court’s disposition on the adjudications was appropriate. ■ C.T.’s appellate counsel admits that C.T. is not a candidate for probation and that his arrest record shows a “downward spiral” in his teenage years. Based on the facts and circumstances of the case, and C.T.’s personal and institutional history, we cannot say that the juvenile court erred or abused its discretion in committing C.T. to the custody of the Department of Public Safety and Corrections until his 21st birthday.

PATENT ERRORS

Pursuant to LSA-C.Cr.P. art. 920(2), C.T. points this court to two errors discoverable by a mere inspection of the pleadings and proceedings and without inspection .of-the evidence. • ■
First, C.T. points out that the juvenile court mistakenly entered a written judgment of disposition on Count 1 after having dismissed it from the petition pursuant to a motion to quash. The State agrees that this written judgment of disposition is contrary to the juvenile court’s action in granting the motion to quash and joins C.T. in requesting that the written judgment be amended to vacate the six-month disposition on Count 1. As a result, we vacate |9this disposition and instruct the juvenile court on remand to amend the minutes and written judgment of disposition accordingly.
In his second alleged patent error, C.T. states that the juvenile court did not advise him of the prescriptive period for filing an application for post-conviction relief, as set forth in LSA-C.Cr.P. art. 930.8(A), which provides that a defendant generally has two years after the conviction and sentence become final to seek *78 post-conviction relief. Although the Louisiana Children’s Code does not provide for post-conviction relief, other courts have found that juveniles must be advised of the two-year prescriptive period to apply for post-conviction relief under LSA-C.Cr.P. art. 930.8(A). See State in Interest of C.L., 15-435 (La.App. 5 Cir. 11/19/15), 180 So.3d 604, 608; State in Interest of D.J., 08-345 (La.App. 3 Cir. 8/28/08), 995 So.2d 1, 11.
Out of an abundance of caution and in the interest of judicial economy, we note for the record and advise defendant that LSA-C.Cr.P. art. 930.8(A) generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. arts. 914 or 922.
ADJUDICATIONS AND DISPOSITION TO AGE 21 AFFIRMED; DISPOSITION ON COUNT ONE VACATED; REMANDED FOR CORRECTION OF MINUTES AND WRITTEN JUDGMENT OF DISPOSITION.
McCLENDON, J., agrees in part and dissents in part and reasons.

. The juvenile court also entered a written judgment of disposition confirming C.T.’s commitment until his 21st birthday on Counts 2 and 4 but also imposing a six-month disposition on Count 1, which had been quashed. As will be discussed later, the six-month disposition on Count 1 was improper.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In the absence of specific procedures provided by the Louisiana Children's Code, courts shall proceed in accordance with the Louisiana Code of Criminal Procedure. See LSA-Ch.C. art. 803.

. We note that the juvenile court imposed a single disposition despite multiple adjudications in this case. In contrast to adult cases, which require separate sentences for each conviction to be appealable, it is appropriate in juvenile cases for a court to declare a single disposition for multiple adjudications. See State in Interest of J.C., 09-2000 (La.App. 1 Cir. 7/15/10), 2010 WL 2802104 (unpublished).